**STATE of Missouri, Respondent,**

**v.**

**James R. CLEVENGER, Appellant.**

**No. WD 68933.**

Missouri Court of Appeals,
Western District.

April 14, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 2, 2009.

Application for Transfer Denied
Sept. 1, 2009.

---

Frederick J. Ernst, Esq., Kansas City, MO, for appellant.

Shaun J. Mackelprang, Esq., and Jamie Pamela Rasmussen, for respondent.

Before Division One: LISA WHITE HARDWICK, Presiding Judge, THOMAS H. NEWTON, Chief Judge, and JAMES E. WELSH, Judge.

LISA WHITE HARDWICK, Judge.

James Clevenger appeals his convictions for second-degree domestic assault and violation of an order of protection. He contends the circuit court prejudicially erred in allowing a Petition for Order of Protection to be published to the jury because the petition contained hearsay allegations about prior assaults. For reasons explained herein, we reverse and remand.

### FACTUAL AND PROCEDURAL HISTORY

Clevenger began a romantic relationship with T.G. in 1992. The couple married in 2000, after they had children together in 1994 and 1999. They separated in 2004 but continued to have contact with one another, including sexual relations.

In February and March of 2006, T.G. received threatening voicemail messages

from Clevenger after she refused his attempts at reconciliation. She reported the threats to the police and filed a Petition for Order of Protection on April 17, 2006. The circuit court granted an *Ex Parte* Order of Protection the next day. Following a hearing on the petition, the court entered a Judgment/Full Order of Protection against Clevenger on April 26, 2006.

That same evening after T.G. went to bed, she heard a loud noise and awakened to find Clevenger with his hands around her neck. Clevenger was yelling about the order of protection. He pulled T.G. out of bed by her hair and forced her outside the home by poking her with an ice pick. Clevenger took her to his camper truck and told her to take off her clothes. He shoved his penis into her mouth, at which point T.G. vomited and passed out. She woke up the next afternoon and asked Clevenger to take her home. He dropped her off around the corner from her home.

Clevenger was arrested and charged with kidnapping, first-degree burglary, second-degree domestic assault, and a misdemeanor violation of an order of protection. Following a jury trial, he was acquitted of the kidnapping and burglary charges. Clevenger was convicted on the remaining charges and sentenced to consecutive terms of ten years for the domestic assault and one year for violating the order of protection. This appeal follows.

## ANALYSIS

■ Clevenger brings two points on appeal. First, he contends the circuit court erred in admitting testimony regarding the threatening voicemail messages because the testimony violated the best evidence rule. Second, he contends the court violated his constitutional right of confrontation by publishing to the jury a Petition for Order of Protection that contained hearsay allegations of prior domestic assaults. Because Point II warrants reversal, we need not address Point I.

We review the trial court's decision to publish evidence for abuse of discretion. *State v. Hartman*, 224 S.W.3d 642, 649 (Mo.App.2007). An abuse of discretion exists only if the trial court's decision was clearly unreasonable and resulted in an injustice to the defendant. *Id.* Even when an abuse of discretion occurs, reversal is required only if the error was so prejudicial that it deprived the defendant of a fair trial. *Id.* at 646.

At trial, the State sought to admit into evidence Exhibit 3, T.G.'s Petition for a Protective Order, as well as Exhibit 4, the *Ex Parte* Order of Protection, and Exhibit 5, the Judgment/Full Order of Protection. Clevenger objected to the admission of Exhibit 3 on the ground that the petition "contains information that is not part of the trial in this case." The prosecutor argued Exhibit 3 was admissible to show that T.G. applied for a protective order but acknowledged that "[w]hether or not it goes to the jury is a different question, to be dealt with at a later time." The circuit court then admitted Exhibit 3 "for that limited purpose" and did not publish the petition to the jury at that time.

After submission of the case, the jury requested all of the exhibits. Clevenger objected to sending Exhibit 3 to the jury room because it contained hearsay. The court overruled the objection and allowed the jury to review the Petition for Order of Protection, along with the *Ex Parte* Order of Protection and the Judgment/Full Order of Protection.

On appeal, Clevenger contends the court erred in publishing the petition to the jury because it contained hearsay allegations of prior assaults that were not relevant to the conduct for which he was charged. The charges against Clevenger for second-de-

gree domestic assault and violation of a protective order were based on events that allegedly occurred on April 26, 2006. However, the petition made specific allegations that Clevenger had assaulted and threatened T.G. on several occasions prior to that date. Clevenger contends the publication of this hearsay and uncharged conduct to the jury was unduly prejudicial because the additional allegations were not subject to cross-examination. None of the trial witnesses had testified about the prior incidents, and Clevenger had no opportunity to question T.G. about the additional allegations once the case was submitted to the jury. Thus, he argues the publication of the hearsay evidence violated his constitutional right to confrontation.

Evidence of uncharged crimes is generally inadmissible because it may encourage the jury to convict the defendant based on his propensity to commit such crimes without regard for whether he is actually guilty of the charged offense. *State v. Burns*, 978 S.W.2d 759, 761 (Mo. banc 1998). Courts also generally exclude hearsay evidence as inherently unreliable because the out-of-court statements cannot be cross-examined, and neither the judge nor jury is able to assess the declarant's demeanor in determining witness credibility. *State v. Copple*, 51 S.W.3d 11, 17 (Mo.App.2001).

The State argues that Exhibit 3 was admissible because the Petition for Order of Protection falls under a recognized hearsay exception as a certified record of judicial proceeding under Section 490.130, RSMo (Cum.Supp.2008). This statute provides that a copy of a certified record from any court in this state "shall be received as evidence of the acts or proceedings of such court[.]" Section 490.130. The State also argues the petition is relevant to a charged offense because it established the existence of the order of protection that Clevenger

allegedly violated. Thus, the State asserts that Exhibit 3 does not qualify as hearsay, in that it was not offered to prove the truth of the allegations asserted in the petition. *Copple*, 51 S.W.3d at 17.

The State's argument is unavailing because the admissibility of Exhibit 3 is not at issue. The circuit court admitted Exhibit 3 for the "limited purpose" of establishing the procedural steps that led to the entry of the order of protection. Evidence is admissible if it tends to prove one issue in dispute, even though it is not admissible to prove other issues and may be prejudicial. *Pope v. Pope*, 179 S.W.3d 442, 463 (Mo.App.2005). In such cases, however, the court must take appropriate measures to limit the evidence to its legitimate purpose. *Id.* at 464. Given the conditional basis on which Exhibit 3 was admitted, the issue here is whether the petition should have been published to the jury, particularly without a redaction or instruction about its limited relevance.

T.G. testified at trial that she had filed a Petition for Order of Protection against Clevenger. The court admitted Exhibit 3 for the sole purpose of corroborating that testimony and establishing that the petition was filed on April 17, 2006. Exhibit 3 provided no facts relevant to the criminal charges against Clevenger, other than the filing date of the petition that led to the protective order. Because the petition provided only cumulative evidence of a filing date that was undisputed, the exhibit had little probative value. Thus, we must consider whether this limited usefulness was outweighed by the prejudicial effect of publishing the entire petition to the jury.

Exhibit 3 contained allegations of prior assaults that were similar to the April 26, 2006 incident for which Clevenger was charged. In the petition, T.G. alleged that Clevenger:

Broke into my home while I was gone, won't leave, destroyed my home. Calls me his whore, head butt me in corner of my eye. Ripped my cloth[e]s of[f], made me suck his D———, tore my panties off me & ripped my bra.

T.G. checked off boxes on the form petition indicating that she had been physically injured, harassed, sexually assaulted, unlawfully imprisoned, and stalked by Clevenger during the period of April 4 through April 12, 2006. She described his specific conduct as follows:

Threaten to burn my home down, take my transportation, take and destroy everything I have and make sure I have nothing. Also threaten to make sure I go 2 prison 4 a long time and get my ass beat everyday.

T.G. further stated in the petition that she was in immediate and present danger of abuse because Clevenger:

Kidnapped me, calls leaves mean messages, he thinks it's ok to beat my ass if he thinks I'm playing games. Leaves messages telling me if I don't come see him or come find him when he finds me I won't like it and I deserve whatever I get. I make him beat me.

In light of the conduct alleged by T.G., the petition contained hearsay evidence of uncharged conduct that was not admissible for the purpose of showing Clevenger's propensity to commit violent crimes. The petition was published to the jury without any admonition that it could not consider these hearsay allegations as evidence of Clevenger's guilt on the charged offense of second-degree domestic assault. Without a limiting instruction, the publication of Exhibit 3 increased the likelihood that the jury would convict Clevenger for his prior bad acts rather than his conduct on April 26, 2006.

Clevenger was prejudiced by the jury's consideration of the petition because he had no opportunity to cross-examine T.G. regarding the hearsay allegations. T.G. did not testify regarding the incidents referenced in the petition, and the jury had no knowledge of the prior incidents until Exhibit 3 was published during deliberations. Without cross-examination, the jury had little reason to question the credibility of the allegations because it was aware that the court had granted the *Ex Parte* and Full Orders of Protection based on T.G.'s petition.

Clevenger was also prejudiced because there is a reasonable probability that the outcome of the trial would have been different if the jury had not seen the allegations in the petition. The jury convicted Clevenger of second-degree domestic assault and violating an order of protection but acquitted him of kidnapping and burglary. While the jury was not convinced of guilt on two counts, it determined there was sufficient evidence to convict on the two counts that most closely parallel the hearsay allegations in the petition. This mixed result strongly suggests that the jury considered the prior incidents of domestic violence in rendering the guilty verdicts. Given the likelihood that the verdict was affected by the publication of improper hearsay evidence relating to uncharged misconduct, Clevenger was denied a fair trial and the convictions must be reversed. *State v. Garrett,* 139 S.W.3d 577, 584 (Mo. App.2004).

## CONCLUSION

The circuit court erred in overruling Clevenger's objection and publishing Exhibit 3 to the jury. The exhibit contained hearsay allegations of prior bad conduct that prejudiced the jury's consideration of the charged offenses and violated Clevenger's right to a fair trial. The judgment is

reversed, and the cause is remanded to the circuit court for a new trial.

All Concur.